

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00221-CR

---

**LARRY PEARSON, JR., APPELLANT**

**V.**

**THE STATE OF TEXAS**

---

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. DC-2022-CR-1005, Honorable Douglas H. Freitag, Presiding

---

March 21, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

A jury convicted Appellant, Larry Pearson, Jr., of harassment of a public servant and assessed punishment at confinement in prison for 70 years.[1] The trial court sentenced Appellant accordingly. Through two issues, Appellant argues character conformity evidence was wrongfully admitted and his sentence of confinement was

---

[1] TEX. PENAL CODE ANN. § 22.11(a)(3). Punishment was enhanced by two prior felony convictions the jury found true. *See* TEX. PENAL CODE ANN. § 12.42(d).

grossly disproportionate to the convicted offense. We overrule Appellant's issues and affirm the judgment of the trial court.

## Background

While on patrol in April 2002, Lubbock Police Department Officer Shawn McCracken observed a vehicle veer in front of his patrol car and stop. McCracken stopped and looked at the other vehicle. He observed a female driver and Appellant, a male passenger in the front seat. According to McCracken, the woman was crying, appeared visibly injured, and was "very distraught." On further inquiry, the woman advised the officer that Appellant had a gun.

McCracken drew his service weapon and called for backup; Appellant refused to exit the vehicle on McCracken's instructions. Backup officers arrived and forcibly placed Appellant in the back of a patrol vehicle. Police found a "silver [] color handgun" underneath the seat previously occupied by Appellant; it initially appeared to be a "live firearm" but turned out to be an air pistol. Appellant was arrested on charges of domestic violence, outstanding warrants, and failing to identify to police.

While in the back of the patrol car, Appellant remained noncompliant, attempting to kick out the vehicle's rear window. As officers tried to control Appellant, he attempted to spit on them. Officers placed a spit hood[2] on Appellant. Appellant successfully removed the spit hood and resumed spitting. According to record evidence, Appellant

---

[2] McCracken testified that a spit hood is "approximately the size of a human head. It's a mesh material with a loose elastic base to it, and we [are] able—basically able to slip it over someone's head, and due to that mesh liner it prevents spit traveling further than it normally would."

2

spat on one officer three times, striking him in the face. Appellant spat on another officer at least twice, which struck her eye and lip.

Evidence also showed that throughout this encounter, Appellant was verbally abusive to officers, calling them "pig" and "bitch." According to the female officer on whom Appellant spat, he said, "B-I-T-C-H that's what you deserve.'" Officers ultimately restrained Appellant to a backboard, placed him in a police van, and transported him to the county jail for booking. Many of Appellant's interactions with police were recorded on video and played for the jury.

Under two cause numbers, Appellant was charged with harassment of public servant: viz., causing his saliva to contact the two officers. The two cases were consolidated for trial. After a guilty verdict, the jury heard evidence without objection of Appellant's alleged violations of a protective order and commission of domestic violence.[3] The jury also received evidence of Appellant's prior convictions for criminal acts committed by Appellant on seven occasions over an eleven-year period, including for criminal trespass, two instances of aggravated robbery, misdemeanor criminal mischief, evading arrest, two instances of domestic assault, and continuous violence against family, as well as conduct in violation of a deferred adjudication order. The jury returned a sentencing verdict of seventy years in the penitentiary.

---

[3] The jury also heard testimony regarding "previous incidents" with Appellant that required using more "than just two [police officers] from the previous incident." An officer agreed with the characterization that Appellant is "someone that was known to the LPD as someone to be a problem person[.]"

3

**Analysis**

**First Issue**

By his first issue, Appellant argues video evidence depicting the commencement of his encounter with police was "improper character evidence used to show the jury that Appellant is aggressive and dangerous and will act in conformity with that aspect of his character." Appellant argues in the alternative that even if such evidence was admissible under Rule of Evidence 404(b) it was inadmissible under Rule of Evidence 403. The State argues these two complaints were not preserved in the trial court.

At a hearing outside the presence of the jury, the State informed the trial court of its "intention to go into the nature of the stop for the case, because . . . the jury is entitled to hear evidence regarding that." The prosecutor elaborated that the State intended to play only the beginning of bodycam or dashcam video of the encounter so that the jury might have an understanding of what took place. Appellant objected on the basis of his inability to confront the vehicle's driver and because the evidence was intended to inflame the jury. The trial court overruled Appellant's objections and explained it would allow the State "to play that portion of the video as to demonstrate what the purpose of the stop was and why the officers responded the way they did . . . ." The court also added, "I want it made clear" that Appellant was not, in fact, in possession of an actual firearm so that the jury had an opportunity to assess the credibility of the driver. After a colloquy in which the court appeared to recognize the potential "404 problem," the trial court overruled Appellant's objection that the driver's statements violated his right to confrontation.[4]

---

[4] The driver, despite being the subject of a trial subpoena, did not appear to testify.

4

Proper preservation of an objection concerning the admission of evidence requires the objection inform the trial court why, or on what basis, the evidence should be excluded, but generally need not contain "magic words" or recite a specific statute. *Ford v. State,* 305 S.W.3d 530, 533 (Tex. Crim. App. 2009); *see* TEX. R. APP. P. 33.1(a)(1)(A) (error is preserved when the record shows that a "complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]"). Our reading of the record indicates the trial court was aware of a Rule "404 problem," though the subsequent discussion from Appellant's counsel appeared to present a Confrontation Clause complaint. For purposes of this appeal, we shall assume, but do not decide, that the trial court was aware of a complaint regarding improper admission of evidence under Rule of Evidence 404 at the time it made its ruling.[5]

Under the rules of evidence, evidence that a person committed "a crime, wrong, or other act" is inadmissible to prove the person acted in accordance with their character on a particular occasion. *See* TEX. R. EVID. 404(b)(1). However, such evidence can be used for other purposes, including but not limited to, proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* TEX. R. EVID. 404(b)(2). Both the Court of Criminal Appeals and this Court have held that evidence of extraneous offenses may be admissible "as same transaction contextual

---

[5] However, we hold that Appellant did not preserve any objection pursuant to Rule of Evidence 403. *See* TEX. R. APP. P. 33.1(a). The record does not reflect that Appellant lodged any objection to the challenged video evidence regarding any danger of unfair prejudice or other problem identified by Rule 403, or that Appellant obtained an adverse ruling.

5

evidence when 'several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction.'" *See Maranda v. State,* 253 S.W.3d 762, 767–68 (Tex. App.—Amarillo 2007, pet. dism'd) (quoting *Prible v. State,* 175 S.W.3d 724, 731–32 (Tex. Crim. App. 2005)). Requiring the parties to avoid reference to evidence under these circumstances would make the State's case difficult to understand or present an incomplete picture; "the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense [so that] an offense is not tried in a vacuum." *Id.* (citing *Moreno v. State,* 721 S.W.2d 295, 301 (Tex. Crim. App. 1986)).

We hold that the challenged video evidence was not admitted to show Appellant's character but to describe the circumstances regarding why Appellant had occasion to interact with the police. Without this contextual evidence, jurors would not have any information regarding why Appellant had any interaction with police officers, why the vehicle in which Appellant was a passenger was parked in the middle of the street, and why police promptly responded to the scene with guns drawn. As such, no abuse of discretion is shown. Appellant's first issue is overruled.

**Second Issue**

By his second issue, Appellant argues his sentence of confinement in prison for 70 years was grossly disproportionate to the offense committed, amounting to cruel and unusual punishment in violation of the Eighth Amendment's prohibition. We agree with the State that Appellant's issue was not preserved for review. Our review of the record indicates only one statement during which Appellant's sentence is referenced: in a motion for new trial, Appellant globally argues, "The verdict and sentence in this cause is contrary

to the law and the evidence." We hold that such a statement does not preserve for review any complaint that Appellant's term of confinement is unconstitutionally excessive. *See Cedillo v. State,* No. 07-11-00370-CR, 2012 Tex. App. LEXIS 4263 (Tex. App.—Amarillo May 29, 2012, no pet.) (mem. op., not designated for publication) (concluding that complaint regarding disproportionate length of sentence was not preserved when motion for new trial argued "the verdict is excessive in view of the evidence and the offense charged"). Appellant's second issue is overruled.

## Conclusion

Having overruled both of Appellant's issues, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.